## STARK v. PIERCE CITY REAL ESTATE COMPANY *et al.*, *Appellants*.

1. **Evidence:** ACCOUNTING. The evidence in a suit for the accounting for the proceeds of the sale of lots examined and *held*—(1) That plaintiff was entitled to a one-sixth interest in eighty acres of the land in controversy ; (2) that the due-bill given him on account of the sale of lots was correct ; (3) that he consented to certain expenditures and must therefore bear his share of them, and (4) that he was entitled to a decree vesting his respective interests in him.

2. ———: ———: UNPAID NOTES: JUDGMENT. Where it appears, in a suit for the accounting for the proceeds of certain lots in which plaintiff had an interest, that the defendants took notes for the property sold, the notes being made in good faith and there being no pretense that defendants had converted them to their own use, it is error to render a money judgment for the plaintiff's interest in them. The decree should be that as soon as the notes were paid, plaintiff should receive his proper share.

*Appeal from Jasper Circuit Court.*—HON. M. G. McGREGOR, Judge.

REVERSED AND REMANDED.

*C. W. Thrasher* for appellants.

(1) The circuit court decreed to respondent too large a proportion of the land and property of said Pierce City Real Estate Company. (2) Said court gave respondent a money judgment against defendants for notes taken by said Pierce City Real Estate Company for sale of land, which had not matured at the time of said judgment, and which said company had not collected. (3) Said court decreed to respondent one-sixth part of a portion of the land owned by said partnership.

*W. Cloud* for respondent.

(1) The judge who tried this cause was more favorably situated than this court to determine the matter of this controversy on the testimony. *Bank v. Murray*, 88 Mo. 196. Although this is an equity case, unless the findings of the trial court are clearly wrong, they will not be disturbed. *Chapman v. McElrath*, 77 Mo. 38; *Hendricks v. Wood*, 79 Mo. 590; *Judy v. Bank*, 81 Mo. 404; *Bushong v. Taylor*, 82 Mo. 660. (2) When a court of equity once acquires jurisdiction it will do whatever is necessary to a complete settlement of the matter in difference. *Real Est. Sav. Inst. v. Collonious*, 63 Mo. 290; *Nelson v. Betts*, 21 Mo. App. 219. (3) In order to avoid circuity of action, equity will often permit a recovery in money. *Alexander v. Relfe*, 74 Mo. 494; *Holland v. Anderson*, 38 Mo. 55, 58; Pom. Eq. Jur., sec. 327.

BLACK, J.—The plaintiff by this suit asks that the defendant corporation and the other defendants account to him for the proceeds arising from the sale of town lots, and that his interest in the unsold lots be vested in him. The suit was begun in 1876; it was heard by a

referee, who made a report of the evidence and his find-
ings, and to that report both parties filed exceptions.
The venue of the cause was changed to Jasper county,
where the case seems to have been tried by the court
without regard to the report of the referee or the excep-
tions made thereto.

1.  The first question is whether the plaintiff is
entitled to one-sixth or one-twelfth part of the land.
On the first of January, 1870, the plaintiff Stark sold
the five-sixths of the land hereafter described to Young
and others.  The agreement states that the parties to
this contract had formed a partnership for the purpose
of procuring a depot on the land, and that each should
bear his proportion of the donation to the railroad com-
pany.  On the nineteenth of February, 1870, Stark con-
veyed the whole of the land to McAfee, who gave him a
declaration in writing, reciting the conveyance of 153
acres, and stating that the depot was to be built thereon ;
that the railroad was to have a right of way over it, also
twenty acres and one-half of the balance.  This writing
then states :  "This property is held in trust by said
McAfee for the following parties : John W. Stark, one-
sixth of one-half, after deducting right of way and
twenty acres for railroad company ; John S. Phelps, E.
T. Robberson, T. A. Sherwood and H. C. Young one-
half of one-sixth each after the deductment aforesaid ;
that said Stark has also conveyed the following land,
to-wit : northeast, southwest and southeast quarter of
northwest quarter, section 21, township 26, range 28 ; that
said McAfee holds the same in trust for himself, John S.
Phelps, H. C. Young, T. A. Sherwood, E. T. Robberson
and John W. Stark, and each one of them are entitled
to one-sixth of said land ; that said Stark conveyed the
following preëmption, to-wit, south half, northwest
quarter, section 28, township 26, range 28 ; that said
McAfee holds the same in trust for said parties afore-
said ; that is, one-sixth of one-half each, and the rail-
road company one-half said preëmption ; that said

McAfee, as soon as said town is laid off, is to proceed and sell the lots and divide the proceeds of the sales among the parties according to their rights and interest as hereinbefore expressed, and convey to the railroad company the amount of land hereinbefore set forth."

On the twenty-third of June, 1871, McAfee conveyed to the railroad company the right of way, the twenty acres, and the one-half of the balance of the 153 acres, the one-half of the five-sixths of the next described eighty acres, and the one-half of the third tract described in the declaration of February 19, 1870.

By reference to that declaration it will be seen that Stark retained the one-sixth of the eighty acres, namely, the northeast quarter of the southwest quarter and southeast quarter of northwest quarter of section 21, etc., while as to the balance he has only the one-twelfth interest. This difference between Stark's interest in the eighty acres and the residue finds further recognition from the fact that McAfee only conveyed to the railroad company the one-half of five-sixths of the eighty acres, the five-sixths being all the interest that he and his associates had therein. On these papers there can be no doubt that Stark owns the one-sixth of the eighty acres.

But the appellants contend that this conclusion is changed by subsequent events. There was purchased in the name of Mr. Young, one of the town proprietors, two other tracts of land known as the Evans and Cowan land; and on the nineteenth of February, 1870, he gave Stark a declaration in writing stating that he held the one-twelfth of those lands for Stark. The legal title to all of these lands seems to have been put in the names of McAfee and Young to facilitate the sale and conveyance of town lots. Lots were sold by them until July, 1872, when the town proprietors, except Stark, organized the corporation known as the Pierce City Real Estate Company, and McAfee, Young and the railroad company conveyed the unsold lots and lands to that corporation.

Stock was issued to these proprietors in proportion of their respective interests, including stock to Stark, representing a one-twelfth of the whole. Payments were made to Stark from time to time by the agents of this corporation, and hence it is insisted that he has accepted this stock as representing his proper share in the property of the corporation. But Stark was not an incorporator, nor was he a director or officer in the corporation, and the circuit court found that he refused to accept the stock, and with this finding we are satisfied ; so that thus far there is nothing to preclude him from claiming his one-sixth in the eighty acres.

In 1880, the parties to this suit stipulated for a reference and as to what accounts should be examined by the referee, and in that stipulation it is provided, in substance, that, while Stark contends that he never gave his consent to the organization of the real estate company, yet he is willing, for the sake of getting an equitable settlement, to acquiesce therein, upon payment of whatever amounts are found due him, provided further that upon such payment there shall be chosen three persons to appraise the real estate, and that he shall be allowed to draw out his one-twelfth interest by lot or in some fair manner. The referee found that Stark was the owner of the one-sixth of the eighty acres, and after that report had been filed the parties again stipulated for the appointment of designated persons "to divide and set apart the property now on hand to the plaintiff as found by the referee." The first of these stipulations gives some countenance to the theory that Stark had but a one-twelfth interest in the property ; but it is to be remembered that he claims no more, as to the great bulk of the property, and the contest as to the extent of his interest is as to the eighty acres only. The subsequent stipulation shows that the parties never intended to cut out any interest he had. The defendants cannot disregard one of these stipulations and hold on to the other. Indeed, we do not think the first has,

or was designed to have, the effect to deprive Stark of any property that might be found to belong to him. The stipulation proceeds upon the assumption that he has the right to take the property belonging to him, whatever it may be found to be.

2. The next question is as to whether there is anything due to Stark for the purchase of the land, or from sales of lots, and the amount thereof. Young and his associates agreed to pay Stark $7,893.35 for the interest in the land purchased from him. Part of this amount was paid by deducting Stark's share of the purchase price of the Evans and Cowan land, and they assumed the payment of the whole price of those tracts. This left due to Stark, $6,556.13 for which they, Young and others, gave Stark a due-bill. Defendants contend that there is a mistake in the amount of this due-bill, but we are satisfied that it states the correct amount.

3. The town proprietors made large expenditures in the erection of a hotel and for other purposes not within the original contemplation of the parties, but we are satisfied that Stark gave his consent to these expenditures and must, therefore, bear his share of them. The business was conducted for a time by Mr. Young, then by Mr. Cowan, and then to 1874 by Mr. Perkins. The accounts of these persons are much confused, no distinction having been made between payments made for the company, and payments made to, or for the benefit of the individuals. The counsel for appellants has re-stated these accounts in his brief, and after a patient examination of the evidence, we find this re-statement to be correct with one exception: Stark is charged with four hundred dollars as having been paid to him in cash by Young, and by a like amount paid to him by Cowan. There is but one such credit endorsed on the due-bill, and that of date October 18, 1870, and this seems to be about the date that he is charged with the two items. We cannot see that Young paid this

item to Stark at all, so Stark should be charged once only with the cash item of four hundred dollars. With this correction, it appears that Stark received on account of sale and on account of the purchase price of the land $7,734.70. He is entitled to receive on account of his share arising from sales $1,441.75, which added to the amount of the due-bill for purchase price of the land makes $7,997.88, thus showing a balance still due to him of $263.18.

4. Thus far Stark's interest has been calculated at a one-twelfth, but as to the eighty acres he has a one-sixth interest; so that he should receive an additional twelfth of the proceeds of sales of lots in the eighty acres. This amounts to the sum of $506.33.

5. Stark is entitled to his decree vesting in him the undivided one-sixth of the unsold lots in the eighty acres, and a one-twelfth interest in the other unsold lots and lands. This portion of the decree of the circuit court is therefore correct.

6. From 1874 to the trial of this cause, Stark received his proper share of the proceeds arising from sales; but there were notes on hand for property sold. Stark has a one-sixth interest in some of these notes, and a one-twelfth interest in others, and for which the court gave him a money judgment. This money judgment is manifestly unjust and ought not to stand. There is no pretense that the defendants or any of them have converted these notes to their own use. These sales, for which the notes were given as deferred payments, were made in good faith; and since Stark claims the benefit of them, he must take according to the terms of the notes. He is not entitled to the money until it is collected, and the defendants should not be bound for losses that may occur in making the collections. No foundation is laid for the appointment of a receiver, and the decree should only ascertain Stark's interest in the

notes, and direct its payment to him from time to time as collected.

7. In view of the fact that these conclusions lead to a decree essentially different from that rendered by the circuit court, the judgment is reversed and the cause remanded with these directions :

First : The circuit court will enter a money judgment in favor of plaintiff and against the defendant, The Pierce City Real Estate Company, for $769.51, with interest at six per cent. per annum from the date of the commencement of this suit. The evidence shows that it was the understanding that the purchase price for the land should be paid to Stark out of the proceeds of the first sales, and applying the payment first to the discharge of the due-bill, it follows that the judgment should be against the real estate company only for the $769.51 and interest.

Second. The court will enter anew the judgment divesting defendants of and investing in plaintiff his interest in unsold lots.

Third. The court will determine the interest of Stark in the uncollected notes and order the payment of that interest to him as the money is collected.

In carrying out the second and third of these directions the court can take account of transactions made and moneys collected and paid out since the former decree in this case, but these directions are designed to put at rest all other controversies. The judgment is therefore reversed and cause remanded. SHERWOOD, J., not sitting ; the other judges concur.